IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **SUSAN HARRISON,** *et al*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:06-CV-121-O |
| | § | ECF |
| **THE PROCTOR & GAMBLE** | § | |
| **COMPANY, TAFT, STETTINIUS &** | § | |
| **HOLLISTER LLP, and** | § | |
| **THOMAS E. GROSSMAN,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion for Summary Judgment ("Def. Mot.") and Brief in Support ("Def. Br."), Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Pl. Rsp."), Defendants' Reply to Plaintiffs' Response to its Motion for Summary Judgment ("Def. Reply") and the parties' Joint Appendix ("App.") filed September 9, 2008.  Doc. No. 86 (7:06-CV-121-O) (N.D. Tex. Sept. 9, 2008).  Having reviewed the parties' briefs and relevant law, and for the reasons stated below, the Court finds that Defendants' Motion should be and hereby is **GRANTED**.

### I.   Background

This is an action for legal malpractice brought by Plaintiffs Susan Harrison, William G. Harrison, III, Tina Harrison, W.G. Harrison, IV, Kathy Allen, Pat Allen, Larry Luxenberg, Cindy Nosser, and John Shelton (collectively "Plaintiffs"), some of the former shareholders of a privately held company, Zooth Inc. ("Zooth").  Plaintiffs bring this claim against the law firm

Taft Stettinius & Hollister, LLP ("the Taft firm") and Thomas E. Grossman ("Grossman") alleging they were negligent in representing Plaintiffs when negotiating the sale of Zooth stock to The Gillette Company ("Gillette").

Zooth produced children's oral health care products and was owned by fewer than 20 shareholders, with the combined shares of Susan Harrison and another shareholder, Steve Nosser, holding majority interest in the company.  *See*, App. 113, 174, 740.  In late 2002 and early 2003, Ms. Harrison, the founder, largest shareholder and chief executive office of Zooth, as well as other shareholders initiated the process of selling Zooth.  Gillette approached Ms. Harrison as early as December 2002, expressing interest in purchasing Zooth.  App. 39, pg. 151.

In response to the expression of interest in having Zooth purchased by another company, Susan Harrison and Steve Nosser communicated with defendant Thomas Grossman regarding the possible representation of Zooth or its shareholders. App. 39, pg. 152; App. 41, pg. 160, 161; App. 902.  In early 2003, Grossman and the Taft firm were hired to represent Plaintiffs in a possible, proposed sale of Zooth.  App. 223, pg. 51, 52. The proposed sale of Zooth was ultimately arranged as the sale of all of the shares of Zooth.  App. 239, pg. 76.

In November 2003, Gillette sent Zooth a formal preliminary indication of interest in purchasing the company.  App. 596.  Weeks later, in late January 2004, Gillette provided Defendants, in their representation of Zooth shareholders, an initial Letter of Intent which purported to set forth the parties' intentions regarding the terms of the proposed sale.   App. 831. After weeks of negotiations by Defendants and Gillette, Susan Harrison and Steve Nosser as

majority shareholders in Zooth as well as a representative from Gillette signed the Letter of Intent.  App. 728, 600.

In early March 2004, Gillette sent a draft of its proposed Stock Purchasing Agreement ("SPA") to Defendants, who in turn identified concerns with the agreement in communications with Plaintiffs.  App. 838, 839.  In addition to a base purchase price of $28 million, the draft SPA contained an earn-out provision, which had not been previously discussed, that provided for extended payments to Plaintiffs based upon the revenue Zooth generated after closing.  *Id.*; App. 437, pg. 201.  The draft did not contain either a provision for "best efforts," which would have arguably protected the earn-out provision from potential diminishment due to inattention to Zooth's products,  or a "change of control" provision, which would have protected the earn-out provision if Gillette were to be subsequently controlled by another company.  App. 838, 839.

After months of negotiations, the final version of the SPA was executed by Gillette and the Zooth Shareholders in June 2004.  App. 525 - 595.  The final SPA included a purchase price of approximately $28 million plus deferred compensation, in the form of the earn-out provision, of between $3 million and $12 million, based upon the sales of Zooth products. *Id.*   The earn-out provision periods were to begin as early as January 2005.

Subsequent to Gillette's acquisition of Zooth, in October 2005, the company merged with and became a wholly-owned subsidiary of the Proctor & Gamble Company.  App. 315, pg. 56-57. At the conclusion of the earn-out period, Zooth shareholders received approximately $4.1 million, which, when combined with the $28 million received at closing, totaled approximately

3

$32 million.  App. 753 - 759.  Under the terms of the earn-out provision, Plaintiffs could have received up to $40 million.  App. 525 - 595.

**Plaintiffs' Allegations**

Plaintiffs allege that Defendants were negligent in their representation of the Zooth shareholders in the transaction with Gillette.  Specifically, Plaintiffs allege that Defendants failed to: 1) conduct a thorough due diligence effort; 2) negotiate and draft a proper contract; 3) disclose potential conflicts of interest, and 4) protect the interests of Plaintiffs.  Pl's First Amended Complaint pg 10.  Plaintiffs' allegations of legal malpractice can be summarized, however, in their contention that Defendants failed to ensure that the "best efforts" and "change of control" provisions were included in the SPA.  Pl's Rsp. pgs. 1, 4.  In essence, Plaintiffs allege that Gillette's subsequent merger with P&G resulted in Gillette failing to devote sufficient resources and efforts to achieve a level of earn-out that Plaintiffs anticipated - the very type of harm a "best efforts" provision in the SPA would have prevented.  Additionally, Plaintiffs allege that P&G failed to provide sufficient attention and efforts to ensure that the earn-out would reach a level hoped for by Plaintiffs - again, the very harm a "change of control" provision would have prevented.  The Court distills the counts alleged in Plaintiffs' complaint into a singular case for legal malpractice.  In support of this distillation, the Court notes that the parties' briefs treat the alleged failures as a single count of legal malpractice.   Finally, Plaintiffs claim that Defendants breached their fiduciary duty.  The Court will treat this matter separately.

**Defendants' Motion**

Defendants raise several grounds in support of their motion for summary judgment. Among the arguments made by Defendants, they argue that Plaintiffs have failed to produce expert testimony establishing that Defendants breached the relevant standard of care and that such a breach was the proximate cause of Plaintiff alleged damages. Consequently, Defendants argue, Plaintiffs' negligence claims must fail as a matter of law because causation must be proved by expert testimony. Def. Br. 8 - 11.

**Plaintiffs' Brief**

Plaintiffs respond by arguing that the testimony of their expert, Richard Tulli, is sufficient to establish breach of the standard of care by Defendants. Pl's. Rsp. 7 - 15. They also argue that expert testimony on causation is not always required in legal malpractice cases, particularly in cases where clients themselves were the key decision-makers while relying on an attorney's advice. *Id.* at 39 - 40. They further argue that expert testimony would not be necessary in order to enable a jury to determine whether the failure to include the "best efforts" and "change of control" provisions diminished Plaintiffs' earn-out potential. *Id.* Finally, Plaintiffs point to the testimony of their expert to prove that he did, in fact, testify to the harm resulting from the absence of such provisions in the SPA. *Id.* at 40 - 41.

## II.   Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are

material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED R. CIV. P. 56(c).

The movant may support its motion for summary judgment by either identifying evidence which negates an essential element of the non-movant's claim or by pointing out that there is no evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id. See also*, *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990); *Shaw v. Broadcast.com, Inc*., 2005 U.S. Dist. LEXIS 18715 (N.D. Tex. August 30, 2005) (Quoting, *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994), that Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Once the movant makes this showing, the non-movant must then direct the court's

attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little*, 37 F.3d at 1075; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "[T]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

### III.   Legal Malpractice Claims

In this diversity case, Texas law applies. Under Texas law, legal malpractice actions are based on negligence. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664, (Tex. 1989). In order to prevail on a claim of legal malpractice, a plaintiff is required to prove: "1) the attorney owed the plaintiff a duty; 2) the attorney breached that duty; 3) the breach proximately caused the plaintiff's injuries, and; 4) damages occurred." *Alexander v. Tutur & Assocs., Inc.*, 146 S.W. 3d 113, 117 (Tex. 2004) (citing *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995) (a plaintiff seeking to recover in negligence must prove that the defendant's breach of a legal duty

proximately caused his damages); *see also*, *Bed, Bath & Beyond, Inc. v. Urista,* 211 S.W.3d 753 (Tex. 2006) (plaintiff bears the burden of proving the elements of negligence to establish tort liability). "Breach of the standard of care and causation are separate inquiries, however, and an abundance of evidence as to one cannot substitute for a deficiency of evidence as to the other." *Id.* at 119.

**Standard of Care**

Texas lawyers are held to the standard of care that would be exercised by a reasonable prudent attorney and are not necessarily expected to be the guarantors of all of a client's expectations. *Cosgrove*, 774 S.W.2d at 664-665. Thus, expert testimony, when assessing negligence, should focus on whether the alleged attorney malpractice is conduct which a "reasonably prudent attorney *could* make in the same or similar circumstance, it is not an act of negligence even if the result is undesirable. Attorneys cannot be held strictly liable for all of their clients' unfulfilled expectations. An attorney who makes a reasonable decision in the handling of a case may not be held liable if the decision later proves to be imperfect. The standard is an objective exercise of professional judgment, not the subjective belief that his acts are in good faith." *Id.* at 665.

**Causation**

Causation is generally proved by expert testimony in legal malpractice cases. *Id.* at 119-20; *see also, Onwuteaka v. Gill*, 908 S.W.2d 276, 281 (Tex. App. – Houston 1995) ("both the breach of the standard of care and proximate cause must be proven by expert testimony"). This is because proving causation may require expert testimony where the causal link between the breach of the standard of care and the alleged damage is beyond the common understanding

of the jury. *Alexander v. Turtur & Assocs.*, 146 S.W.3d at 120. "[A]n attorney's preparation, management and presentation of litigation involv[ing] matters of judgment and tactical choices...[is] conduct beyond the ken of jurors," and must be proven by expert testimony. *Floyd v. Hefner*, 556 F. Supp. 2d 617, 643 (S.D. Tex. 2008) (Citing, *Alexander* 146 S.W.3d at 120). An example of an attorney's lack of care and skill sufficiently evident to be considered a matter of common understanding includes those cases where an attorney allows the statute of limitations to run on a client's claim. *Floyd*, 556 F. Supp. 2d at 643 (Citing, *James V. Mazuca and Associates v. Schumann*, 82 S.W.3d 90, 97 (Tex. App.– San Antonio 2002, pet. denied)). The Fifth Circuit has upheld the requirement of expert testimony in those cases where the attorney's alleged conduct is not obviously egregious, while providing that such testimony is not required where the conduct is sufficiently overt as to be obvious to a lay person. *Geiserman*, 893 F.2d at 794, (upholding grant of summary judgment against legal malpractice plaintiff whose expert's testimony had been excluded).

     Texas courts have repeatedly held that, even where it can be shown that a lawyer has breached the standard of care, a claim of legal malpractice may nonetheless fail where there is no expert testimony linking the lawyer's breach to the damages suffered by a plaintiff. *See, e.g., Haynes & Boone v. Bowser Bouldin Ltd.*, 896 S.W.2d 179, 181-82 (Tex. 1995) (even where it was established that defendant attorneys breached the standard of care, the plaintiffs' legal malpractice claim failed because there was no competent expert testimony establishing "a direct causal link" between the lawyers' actions and the plaintiffs' injuries); *Cantu v. Horany*, 195 S.W. 3d 867, 873 (Tex. App. Dallas 2006, no pet.) (Plaintiff's malpractice claim failed because there was no expert testimony to show that the defendant's breach caused any damage, despite

having established that the expert testimony was sufficient to show breach).

In malpractice cases arising from prior litigation, a plaintiff must prove causation by establishing that, but for the attorney's breach of duty, the plaintiff would have prevailed in the underlying case. *See, Hoover v. Larkin*, 196 S.W.3d 227, 231 (Tex. App.- Houston 2006) (Discussing the "but for" analysis for causation should involve the so-called "case-within-a-case" causation requirement). However, in cases involving business transactions or contractual negotiations - factual resumés more akin to the present matter before the Court - a plaintiff must show that a negotiated term or provision would have been accepted by the other party to the negotiation. *See, e.g.*, *Tolpo v. DeCordova*, 146 S.W.3d 678 (Tex. App.- Beaumont 2004) (holding that an absence of evidence in the record as to whether the parties would have accepted a negotiable term was a sufficient basis for granting summary judgment); *Hoover v. Larkin*, 196 S.W.3d at 231; (Affidavit testimony of plaintiff's expert did not "aver that [she] could have succeeded . . . in achieving her settlement but for her attorney's alleged negligence").

### IV.   Discussion

As an initial matter, because "breach of the standard of care and causation are separate inquiries . . . and an abundance of evidence as to one cannot substitute for a deficiency of evidence as to the other," the Court does not need to evaluate the evidence with respect to the standard of care in order to reach its decision in this case. *Alexander*, 146 S.W. 3d at 119.

The Court must first consider whether this case requires that causation be proved by expert testimony. Plaintiffs' argue that expert opinion regarding causation is not always required in legal malpractice cases. They direct the Court's attention to cases where clients themselves

were the key decision-makers while relying on an attorney's advice. Plaintiffs rely on *Streber v. Hunter*, 221 F.3d 703 (5th Cir. 2000), in which the Fifth Circuit determined that the issue of the case before it was not beyond the competence of ordinary jurors to decide. The Court in *Streber* specifically found that "lay testimony was sufficient to establish causation" where a taxpayer heeded the advice of his attorney and rejected a settlement offer, under the assurances that the case would prevail at trial. *Id.* at 726. The Court in *Streber* found support for its decision in *Delp v. Douglas,* 948 S.W.2d 483 (Tex. App. – Fort Worth 1997), insofar as *Delp* stood for the proposition that expert testimony is not always required to establish causation. In *Delp*, the Texas court held that the plaintiff, as a lay person, was qualified to testify that the advice he received from his lawyer while negotiating a settlement resulted in the loss of control of a privately held company. *Delp*, 948 S.W. 2d at 495-496. Plaintiffs suggest that, as was the case in *Delp*, any rationale juror could do the simple math in determining that "P&G does not understand a relatively small business like Zooth" and will "have a hugely negative impact on Zooth's bottom line, which will consequently diminish the Earnout to the former Zooth shareholders." Def. Rsp. at 40.

Plaintiffs' reliance upon *Delp* and *Streber* is similar to the distinction drawn in *Alexander* by the Supreme Court of Texas. The *Alexander* Court, upon analyzing those two cases, acknowledged that the causal link was obvious enough that it could be supplied by the client's respective testimony. The *Alexander* Court also examined the allowance of lay testimony by a client, as developed in *Delp* and *Streber,* in order to distinguish them from the case before it on appeal. Ultimately, the *Alexander* Court looked to the complexity of the underlying case in deciding that expert opinion was necessary to establish causation. In the present case, the Court

finds that the approach adopted in *Alexander* - looking to the complexity of the case - is appropriate for three reasons.

First, the factual profiles of the cases Plaintiffs' rely upon dealt with advice from lawyers that was patently poor and obviously wrong, so much so that the Court fails to see how any reasonably prudent attorney could render the same advice in a similar circumstance. *Cosgrove*, 774 S.W.2d at 665.  In *Streber,* the attorney advised his client not to settle with the IRS on a tax liability - an obligation that the client acknowledged as being owed to the Government - convincing her instead that he could prevail in court.  In *Delp,* the attorney admonished his clients to accept a settlement offer that aborted their control of a closely-held company - rendering their decision making capacity inoperable.  In the present case, the Court fails to identify any evidence of objectively poor advice as is found in *Streber* and *Delp*.

Second, both *Delp* and *Streber* involved factual backgrounds in which the respective clients were presented with a relatively simple decision to be made.  (*Streber* involved a decision to accept or reject a potential settlement offer from the IRS; *Delp* dealt with a decision to accept a settlement agreement).  In the present case, however, the clients, Susan Harrison and Steve Nosser, were involved in relatively complex negotiations over the acquisition of stock in Zooth.  Indeed, Plaintiffs describe the negotiations conducted between Gillette and Defendants as "complex" and as having  "proceeded for months."   Def. Rsp. at 7.  They further describe the stock purchasing agreement as a matter involving nuance. *Id.* at 8.  Plaintiffs later inform the Court that the "relevant issues, alternative, and consequences are sufficiently complex that, if addressed only in the course of negotiations, they would not likely be understood or appreciated by persons who are not sophisticated regarding, or experienced with, mergers and acquisitions."

*Id*. at 10. Even Plaintiffs' Expert noted the complexity of the issues involved, observing that "the relevant issues, alternatives, and consequences are sufficiently complex that, if addressed only in the course of negotiations, they would not likely be understood or appreciated by persons who are not sophisticated regarding, or experienced with, mergers and acquisitions." App. 825.

Finally, and perhaps most importantly in distinguishing the present case from *Delp* and *Streber*, is the fundament point that the Plaintiff-clients in this dispute were not the decision-makers with respect to the inclusion of the terms at issue. Any decision to accept or reject the negotiated terms in the present case would have resided with the Gillette Company, not with Plaintiffs. In cases where a plaintiff insists that a specific provision would have been included or a settlement would have been accepted, Texas courts require a plaintiff to point to specific evidence that the other party to the contract or settlement would have accepted the provision. *See, Tolpo*, 146 S.W.3d at 684; *Hoover*, 196 S.W.3d at 231. On this point, the record demonstrates that Gillette would have *considered* such terms, but fails to provide evidence that Gillette would have *permitted the inclusion* of such terms in the SPA.[1] Accordingly, the evidentiary record is insufficient to establish that the terms would have been accepted, and thus, Plaintiffs have failed to meet their burden. *Id.* The Court also observes that Plaintiffs' expert testified that he did not "have any indication" that Gillette would have agreed to a best-efforts provision. App. 396, pg. 35.

Negotiations for, and the drafting of, a stock purchasing agreement demands specialized

---

[1] App. 371, pg. 275. The deposition testimony of Mr. Bruce A. Cleverly, the former President of the global oral care business at Gillette, indicates that Gillette would have only "considered" the inclusion of a change of control provision.

knowledge by an experienced lawyer. Pls' Rsp. at 2. The ability to prepare such an agreement and the concomitant evaluation of all factors involved in the context of stock acquisition requires specialized knowledge of the law. This is a skill not ordinarily possessed by lay persons. A lay jury cannot be expected to ascertain, without guidance from a legal expert, whether an attorney obtained a reasonable agreement for a client in this fact situation. In light of the above, and because "the causal link is beyond the jury's common understanding," the Court finds that Defendants alleged failure to ensure the inclusion of the provisions in question in negotiating the SPA involves professional acumen that is admittedly complex and, thus, beyond the common understanding of a jury. *Alexander*, 146 S.W.3d at 120. The Court, therefore, concludes that expert opinion is necessary in the present case to establish causation.

The Court must next consider whether Plaintiffs' expert provided evidence "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075. Plaintiffs argue that their expert "testified extensively about the harm to the Plaintiffs that resulted from" Defendants' failures to negotiate the "best efforts" and "change of control" provisions and their "failures to communicate with the Zooth shareholders the risks and consequences of these omissions." Def. Rsp. at 40. However, Plaintiffs' argument alone does not satisfy the requirement that evidence of causation be established expert testimony. At no point in the record is there sufficient expert testimony specifically articulating that Defendants' alleged omissions in drafting the SPA were, in fact, the direct causal link to Plaintiffs' alleged damages. Without such evidence, Plaintiffs' claims of legal malpractice fail. *Celotex*, 477 U.S. at 322 - 323, 328; *see also, Alexander*, 146 S.W.3d 113. Additionally, there is no evidence that Gillette would have

14

accepted the provisions at issue. *Tolpo*, 146 S.W.3d at 684.

Moreover, during deposition testimony, Plaintiffs' expert affirmatively disclaimed any opinion as to causation. Mr. Tulli testified:

> Q: So you cannot say that any alleged act or omission of Taft proximately caused any specific amount of damage, correct?
>
> Tulli: Correct
>
> Q: Now, your report . . . does not express any opinions concerning causation, does it?
>
> Tulli: No.
>
> Q: . . . Since you have no opinions on proximate cause, you're not apply any Texas standard of proximate cause?
>
> Tulli: Correct.
>
> Q: So it's fair to say you're not expressing any opinions about proximate cause for anybody in this case?
>
> Tulli: That's correct.

App. 0400, pg. 50.

Because Defendants have asserted that there is no evidence as to causation, an element of Plaintiffs' claim, the Court concludes that it has met its initial summary judgment burden. Upon such a finding, the burden shifted to Plaintiffs to show a genuine issue for trial as to whether such evidence of causation - by expert testimony - exists on the record. The Court is not persuaded that they have sufficiently done so. Plaintiffs have only attempted to rebut the

15

Defendants' initial showing by pointing to statements of their expert dealing with alleged damages and alleged breach, but at no point do they point to testimony establishing evidence of causation for a jury to consider. Moreover, the Court is persuaded that Plaintiffs' expert affirmatively disclaimed any legal opinion of causation.

Finally, with respect to Plaintiffs' claims for breach of fiduciary duty, expert testimony is also generally required to establish a fiduciary breach where causation is beyond common knowledge. *Geiserman v. MacDonald*, 893 F.2d 787, 793 - 94 (5th Cir. 1990) ("breach of a fiduciary duty or a conflict of interest requires proof of expert testimony. . . In instances of egregious negligence that are obvious to a lay person or established as a matter of law, expert testimony is not required). On this point, Plaintiffs' expert affirmatively disclaimed any opinion on breach of fiduciary duty. App. 403, pg. 65. Based on the foregoing analysis of the complexity of this case and Plaintiffs' failure to adduce expert testimony sufficient to establish causation, the Court finds that Plaintiffs claim should be, and hereby is DISMISSED.

## V.   Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. All of Plaintiffs claims are hereby **DISMISSED** with **PREJUDICE**.

Signed this 9th day of February, 2009.

*/s/ Reed O'Connor*
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**